UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KENNETH TAYLOR, <br> TDCJ # 00828757, <br><br> Plaintiff, <br> VS. <br><br> BRYAN COLLIER, *et al*, <br><br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 3:17-CV-358 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Taylor, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this lawsuit *pro se* complaining of excessive heat at the Terrell Unit. Plaintiff filed a motion for summary judgment (Dkt. 17) with several supporting documents (Dkt. 18, Dkt. 19, Dkt. 20). Defendants filed a response and cross-motion for summary judgment (Dkt. 29), and Plaintiff filed a reply (Dkt. 34). The motions are ripe for decision.[1] After reviewing the pleadings and briefing, the applicable law, and all matters of record, the Court concludes that Plaintiff's motion for summary judgment should be **DENIED**, that Defendants' motion for summary judgment should be **GRANTED**, and that all of Plaintiff's claims in this lawsuit should be **DISMISSED** for the reasons that follow.

---

[1] The Court previously denied emergency injunctive relief on Plaintiff's claim regarding excessive heat (Dkt. 36) and now has completed a thorough review of the record.

I.  **<u>BACKGROUND</u>**

Taylor alleges that he has a cardiovascular condition that places him at risk of stroke and that extreme heat conditions at TDCJ's Terrell Unit jeopardize his health during the summer months (Dkt. 1, at 4; Dkt. 17, at 1).[2] He brings an Eighth Amendment claim against three Defendants: Bryan Collier, Executive Director of the Texas Department of Criminal Justice; Jacqueline Jones, warden of the Terrell Unit; and Eric Miller, an assistant warden at the Terrell Unit. He sues all three Defendants in their official capacities only (Dkt. 34, at 7).

Taylor seeks injunctive and declarative relief, not only for himself, but on behalf of a "large number" of "sick and elderly" inmates at the Terrell Unit and at other unidentified "medical related" TDCJ facilities (Dkt. 1, at 4; Dkt. 20, at 1).[3] He requests broad relief, in particular, an order requiring the Terrell Unit and "and other medical related facilities" to maintain an indoor temperature of "65º –85º year round" and to obtain infrastructure to "support this [temperature-control] system on emergency power" (Dkt. 1, at 4; *see* Dkt. 20, at 2).[4]

Defendants have made several disclosures to Plaintiff over the course of this lawsuit, and have disclosed documents including Plaintiff's medical records from TDCJ

---

[2] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

[3] Plaintiff previously moved for certification of a class of "heat restricted" inmates (Dkt. 13), which the Court denied (Dkt. 36).

[4] Taylor claims that the Terrell Unit has "frequent power outages ranging from hours to days" during which the inmates have no ventilation. *See* Dkt. 1, at 4-5 ("during [Hurricane] Harvey we went without power for over 24 h[ours] while waiting to be moved to other units").

and the University of Texas Medical Branch ("UTMB") from 2016–2018; Plaintiff's classification and housing records; records of Plaintiff's I-60 communications with prison officials; Plaintiff's administrative grievance records; TDCJ's policies for extreme temperatures, inclement weather, heat stress, and health complaints; and the Terrell Unit's heat mitigation efforts for 2017 and 2018 (Dkt. 14; Dkt. 21; Dkt. 27).

### A. Plaintiff's Medical Condition

Taylor does not identify his medical diagnosis. In his briefing and declaration, he states without elaboration that he has a cardiovascular condition that affects "the blood flow to the brain" and that the heat plays a "major" role in his health (Dkt. 19, at 1; *see* Dkt. 34, at 3; Dkt. 34-1, at 2). He submits a partial, re-typed reproduction of an article from a Harvard Medical School blog stating that "hazy, hot, humid days can be downright dangerous" for "people with cardiovascular trouble" (Dkt. 34-1, at 23-24; *see* Patrick J. Skerrett, *Heat is hard on the heart; simple precautions can ease the strain*, HARVARD HEALTH PUBLISHING (July 22, 2011, 2:48 PM, updated Nov. 28, 2017, 12:01 PM), https://www.health.harvard.edu/blog/heat-is-hard-on-the-heart-simple-precautions-can-ease-the-strain-201107223180). Taylor states that when he gets overheated, he is prone to a transient ischemic attack ("TIA"), or "mini-stroke," and that his risk of a "full-on" stroke is increased (Dkt. 34, at 3).

The record contains general support for Taylor's claims that he has a cardiovascular condition and a history of strokes. Taylor was hospitalized in August 2018, while this lawsuit was pending, and is taking some medications used to treat a cardiovascular condition (Dkt. 46). A partial medical record from October 2018 supplied

by Plaintiff indicates that Plaintiff previously had a TIA, a stent placement, and a "breakthrough seizure" (Dkt. 42, at 7).

Plaintiff does not claim to have experienced any symptoms as a result of the heat, such as dizziness or shortness of breath. He also does not allege that he takes medications that increase his heat sensitivity. Although he states that he has had "increased TIAs" at the Terrell Unit (Dkt. 34, at 5, 7), he does not provide any dates or other details about any TIA or other medical episode, and provides no information supporting his allegation that the episodes were caused by the heat. He does not allege that his medical episode leading to hospitalization and treatment in August 2018 was heat-related.[5]

Plaintiff alleges that he informed Defendants through administrative grievances and I-60 communications that the heat impacted his health. The record contains two administrative grievances filed by Plaintiff which complained in general about the heat at the Terrell Unit. However, neither of these grievances raised any issue about Plaintiff's medical condition and did not allege that the heat affected his health.[6] As for his I-60 forms, the record contains no communications from Taylor regarding the effects of heat on his health. Although Plaintiff appears to allege that he submitted additional I-60

---

[5] Although Plaintiff alleges briefly that the heat contributed to his need for emergency medical care in June 2014 when he was incarcerated at the Polunsky Unit (Dkt. 34, at 12), this allegation is irrelevant to his claims in this suit regarding the Terrell Unit.

[6] See Dkt. 1-1, at 1-4 (Grievance No. 2017174288) (complaining generally that the Terrell Unit was "out of compliance" with a class action lawsuit ordering heat mitigation relief at another TDCJ unit; Dkt. 53 (Grievance No. 2018011565) (complaining that the Terrell Unit's emergency power infrastructure was inadequate).

communications complaining about the heat that officials never answered,[7] he has not directed the Court's attention to any relevant I-60 forms and does not describe any specific requests he made in those communications.[8]

### B. Plaintiff's Housing Assignment

Taylor claims that he moved from the Pack Unit to the Terrell Unit in early 2017 because a "medical specialist" requested, due to his risk of stroke, that he be housed closer to Hospital Galveston (Dkt. 19, at 1; *see* Dkt. 1, at 4; Dkt. 34, at 3). He alleges that he made his cardiovascular condition and heat sensitivity "fully known" to Defendants when he arrived at the Terrell Unit in 2017, and that he told the classification committee that the heat affected his medical condition and increased his stroke risk (Dkt. 34, at 3).

Taylor's TDCJ health summary classification record, referred to as an "HSM-18" form, reflects no heat-related housing restriction in 2017 or later, although he was designated for ground floor and lower bunk (Dkt. 29-11, at 5; *see id*. at 2-4 (subsequent HSM-18 forms)). Defendants have presented an affidavit from the Terrell Unit's chief of classification, which explains that TDCJ relies on medical providers at UTMB to enter relevant health information on the HSM-18 form, and that the form "is binding on all classification and correctional staff" (Dkt. 47, at 3).[9] TDCJ personnel use the HSM-18 to make housing and work assignments (*id*.). Although Taylor presents evidence of a "no

---

[7] *See* Dkt. 34, at 2, 4; Dkt. 34-1, at 3 (stating in declaration that she sent an I-60 informing the warden that he "had issues with the heat").

[8] As stated above, Defendants' disclosures to Plaintiff included his I-60 records (Dkt. 21).

[9] Defendants, as TDCJ officials, lack access to Plaintiff's medical records for privacy reasons (*id*.; Dkt. 46-2, at 4).

temperature extremes" restriction on his work assignments (Dkt. 29-11, at 2-3),[10] the work restriction is not relevant to his claim that he had a heat-related housing restriction (*see* Dkt 47, at 3).

In October 2018, after Plaintiff was hospitalized for a cardiovascular condition, one of Plaintiff's medical providers made a notation in his record that Plaintiff needed to be housed close to the pill window. *See* Dkt. 42, at 7 (memorandum dated October 11, 2018 states that Taylor "had a breakthrough seizure" and "NEEDS TO BE AS CLOSE TO PILL WINDOW AS POSSIBLE" to increase compliance with medication regime). There is no indication in the record that this recommendation was related to heat exposure. Taylor has not alleged that any medical provider required or recommended any restrictions on his housing assignment to avoid exposure to summer heat at the Terrell Unit.

C.  **Litigation regarding TDCJ's Pack Unit**

Taylor argues that he is entitled to relief on his claims because the Terrell Unit has a similar design to TDCJ's Pack Unit, which was the subject of a separate lawsuit in *Cole v. Collier*, Civil Action No. 4:14-cv-1698 (S. D. Tex.) (Ellison, J.). In *Cole*, the court certified a class of inmates at the Pack Unit in addition to two subclasses of medical need inmates and disabled inmates. Plaintiff refers the Court to Judge Ellison's 2017 opinion,

---

[10] This work restriction was put in place in October 2017, apparently after Taylor requested that his medical unassignment be terminated so that he could work in the Terrell Unit's cannery *See* Dkt. 29-10, at 4 (I-60 form from Taylor in September 2017 states "I want my unas[s]ign medical restriction 'removed' . . . <u>I would like to sign a refusal for my unas[s]ign medical restriction . . . so I can return to my job in the cannery</u>") (emphasis original); Dkt. 29-10, at 3 (form signed by Taylor on October 6, 2017, refuses his "medically unassigned" designation for work assignments).

which granted limited injunctive relief, carefully tailored to each class of inmates, based on evidence from a nine-day evidentiary hearing. Memorandum and Opinion Setting Out Findings of Fact and Conclusions of Law, dated July 19, 2017 (Dkt. 737 in *Cole*); *see Cole v. Collier*, 2018 WL 2766028 (S.D. Tex. June 8, 2018) (approving class action settlement agreement regarding heat mitigation measures).

Plaintiff asserts that the *Cole* litigation mandates relief for the Terrell Unit because the two units "have almost identical floor plans and house the same type of medical inmates" (Dkt. 25, at 2).[11] Taylor also claims that TDCJ "already made an admission of guilt in relation to the heat related problems [at the Terrell Unit] when they settled" the *Cole* litigation (Dkt. 34, at 3). Defendants have presented evidence that, during the pendency of the *Cole* litigation in 2017 and 2018, additional heat mitigation measures were implemented at the Terrell Unit, including air-conditioned respite areas, ice water, personal fans, cool-down showers, and wellness checks (Dkt. 29, at 13-16; Dkt. 29-1 (Terrell Unit heat mitigation measures for 2017 and 2018). Plaintiff claims that these heat mitigation measures are often ineffective or unavailable because, for example, water coolers are not refilled, cool-down showers are hot, and respite areas are not actually air conditioned (Dkt. 34, at 10-15).

---

[11] Plaintiff acknowledges that some issues he raises were not litigated in *Cole*. *See* Dkt. 20, at 2 ("This power issue may not have been litigated on the Pack case. But it should be a very rel[evant] issue when we are talking about sick people").

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff

must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

B.  **Summary Judgment—Rule 56**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III. ANALYSIS

Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. See *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Plaintiff alleges that excessive heat at the Terrell Unit poses an excessive risk to his health or safety in violation of the Eighth Amendment. He seeks a court order requiring air conditioning for the entire Terrell Unit, and other unnamed TDCJ facilities, so as to maintain temperatures between 65º and 85º year-round (Dkt. 1, at 4).

Defendants move for summary judgment arguing that Plaintiff lacks standing and his Eighth Amendment claim lacks merit.

### A. Standing

Defendants argue that Plaintiff lacks standing to bring this lawsuit because he has not alleged or presented evidence of an injury in fact. The "irreducible constitutional minimum of standing" under Article III requires a showing of an "injury in fact," a causal connection between the injury and the alleged conduct, and a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018).

The "injury in fact" must be "concrete and particularized" and must also be "actual or imminent" rather than "conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). The party invoking federal jurisdiction bears the burden to establish standing. *Id.* at 561. Because "Article III standing implicates the federal judiciary's power to adjudicate disputes," it "can be neither waived nor assumed." *Morgan*, 879 F.3d at 606 (internal citation and quotation marks omitted); *see In re Deepwater Horizon*, 857 F.3d 246, 253 n. 34 (5th Cir. 2017) (standing cannot be inferred, but rather must "affirmatively appear in the record" (internal citation and quotation marks omitted)).

In the case at bar, Taylor has not alleged that he has suffered any symptoms because of the heat at the Terrell Unit. He has not alleged he takes medications that increase his heat sensitivity, nor provided facts about any specific medical episode that allegedly was heat-related. Therefore, he has failed to demonstrate any actual, concrete "injury in fact" that was caused by the heat conditions at the Terrell Unit, and has not met his burden to establish standing. *See Morgan*, 879 F.3d at 606 (holding that a "speculative" complaint regarding possible future harm was "too conjectural to constitute an injury in fact"). Defendants are entitled to summary judgment on this ground.

### B. Eighth Amendment Claim

For essentially the same reasons, Plaintiff's claim fails on Eighth Amendment grounds. The Court addresses this issue, which has been fully briefed by the parties, as an alternative ground for summary judgment.

1. **Legal Standards**

The Eighth Amendment protects prison inmates against unconstitutional conditions of confinement. *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). To state an Eighth Amendment claim, Taylor must allege a "substantial risk of serious harm," as well as "deliberate indifference" by Defendants:

> To plead an Eighth Amendment violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions that pose a substantial risk of serious harm. The plaintiff must also allege that the defendant prison officials were deliberately indifferent to the inmate's health or safety. . . . [A] prison official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (internal quotation marks, citations, and alteration omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)); *see Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa*, 807 F.3d at 665. *See Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006); *Domino*, 239 F.3d at 756. In addition to showing that the defendants were aware of a substantial risk of serious harm, a plaintiff also must show that defendants disregarded the risk "by failing to take reasonable measures to abate it." *Hernandez*, 522 F.3d at 561.

The Eighth Amendment "'guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.'" *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) (quoting *Hinojosa*, 807 F.3d at 669); *see Gates*

*v. Cook*, 376 F.3d 323 (5th Cir. 2004). "[M]erely uncomfortable heat in a prisoner's cell does not reflect a basic human need that the prison has failed to meet." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) ("*Ball I*") (internal citation and quotation marks omitted). Rather, extreme heat in prison cells amounts to a constitutional violation when it poses "an unreasonable risk of serious damage to a prisoner's health" and prison officials act with deliberate indifference to the risk. *Ball I*, 792 F.3d at 592. The Fifth Circuit "generally has eschewed setting maximum temperatures for prisons" as relief for Eighth Amendment violations but, in appropriate cases, has affirmed heat mitigation measures such as ice, fans, and showers. *See Ball v. LeBlanc*, 881 F.3d 346, 352 n. 10 (5th Cir. 2018) ("*Ball II*") (collecting cases). Although air conditioning in prison cells is not "necessarily an impermissible remedy," *Yates*, 868 F.3d at 370, the PLRA mandates narrow relief. *See Ball I*, 792 F.3d at 598-99 (relief under the PLRA must be "'narrowly drawn'" and "'shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs,'" quoting 18 U.S.C. §3626(a)(1)(A)). Therefore, an injunctive remedy requiring air-conditioning is inappropriate unless "other acceptable and less-intrusive remedies" have been tried and found unsuccessful. *Yates*, 868 F.3d at 370; *see Ball II*, 881 F.3d at 349 n.2; *id.* at 357 n.2 (Higginson, J., concurring).

2. **Harm**

On this record, Taylor has not demonstrated a fact question as to a "substantial risk of serious harm" to his health resulting from the heat at the Terrell Unit. As a preliminary matter, Taylor has not provided facts or made allegations about the actual

indoor temperatures at the Terrell Unit, which was part of the record in cases granting relief. *See, e.g., Ball I*, 792 F.3d at 590 (citing evidence that the heat index on one prison tier had exceeded 107º ); *Blackmon v. Garza*, 484 F. App'x 866, 870-71 (5th Cir. 2012) (citing evidence of heat indexes in dangerous ranges over a 2.5-month period). Rather, he urges the Court to rely on findings made by the *Cole* court regarding indoor temperatures (Dkt. 34, at 9 (citing newspaper coverage of *Cole* litigation)). By Plaintiff's description, and according to the newspaper article he has presented in re-typed form (Dkt. 34-1, at 26-27), the temperature findings in *Cole* pertained only to the Pack Unit and concerned temperatures as early as 2014.

Moreover, as noted above regarding standing, Taylor has not directed the Court's attention to any medical records or other evidence indicating that his medical condition has been affected by the heat at the Terrell Unit. Taylor has not alleged that he has suffered any symptoms because of the heat at the Terrell Unit. *Cf. Ball I*, 792 F.3d at 590 (inmates who had conditions such as hypertension and diabetes, and took medications for those conditions, reported dizziness, headaches, and cramps); *Gates*, 376 F.3d at 339 (referring to expert testimony about "many [inmate] complaints of symptoms commonly recognized to be related to heat-related illness and that those conditions had simply gone undiagnosed"); *Blackmon*, 484 F. App'x at 872 (plaintiff testified that the heat in his prison dorm caused headaches, dizziness, lightheadedness, nausea, blurred vision, shortness of breath, and aggravation of his high blood pressure). He has not alleged that any specific medical episode (including his recent hospitalization in August 2018) was heat-related, nor that he takes medications that increase his sensitivity to heat. Even

assuming the truth of Taylor's general assertion that cardiovascular patients are vulnerable to heat exposure, this showing is insufficient to demonstrate a substantial risk of serious harm to Taylor. Simply put, Taylor's conclusory allegation that the heat affects his health is insufficient to defeat summary judgment on his Eighth Amendment claims.[12]

To the extent Plaintiff claims that he has demonstrated a genuine issue of material fact as to "substantial risk of serious harm" based solely on the *Cole* litigation and settlement, his claim fails. The Court in *Cole* fashioned injunctive relief that was based on an extensive factual record and was specifically tailored to conditions at the Pack Unit and the inmates' medical conditions. Plaintiff's arguments that the Pack and Terrell Units have "almost identical" floor plans and types of inmates (Dkt. 25, at 2) is insufficient to demonstrate a genuine issue of material fact as to a substantial risk to Taylor's health. Moreover, Defendants have presented evidence that heat mitigation measures were implemented at the Terrell Unit in 2017 and 2018, during the pendency of the *Cole* litigation. This evidence rebuts Taylor's assumption that *current* conditions at the Terrell Unit are "almost identical" to *previous* conditions at the Pack Unit that warranted judicial relief.[13]

---

[12] *See Outley*, 840 F.3d at 217 & n.9 (a *pro se* plaintiff must specifically refer to evidence in the summary judgment record); *Jones*, 678 F.3d at 348 (non-movant cannot avoid summary judgment with "conclusional allegations" or "unsubstantiated assertions").

[13] Plaintiff disputes Defendants' evidence regarding the Terrell Unit's heat mitigation measures and their effectiveness. The Court need not address this factual dispute because, as stated above, Plaintiff has not adequately shown that he was injured by the heat at the Terrell Unit, whether or not the heat mitigation measures are effective. The Court here notes the recent

On this record, Taylor has failed to demonstrate a genuine issue of material fact that TDCJ officials are subjecting him to an "unreasonable risk of serious damage" to his health based on his housing assignment at the Terrell Unit. *See Ball I*, 792 F.3d at 592. Additionally, the Court notes that Taylor has failed to show that his request for relief, specifically, his request that the Court order air-conditioning for the entire Terrell Unit is "narrowly drawn" as required by the PLRA. *See* 18 U.S.C. § 3626(a)(1)(A); *Ball I*, 792 F.3d at 598-99.

### 3. Deliberate Indifference

Plaintiff also has failed to show a genuine issue of material fact that Defendants were deliberately indifferent to a substantial risk to Plaintiff's health. To defeat summary judgment, Plaintiff must point to competent summary judgment evidence that Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm to his health existed from high temperatures at the Terrell Unit, and actually drew the inference, but nevertheless disregarded the risk. *See Hinojosa*, 807 F.3d at 665; *Hernandez*, 522 F.3d at 561.

Taylor appears to argue that Defendants are deliberately indifferent because, when he arrived at the Terrell Unit, he informed the classification committee of his medical condition and of the fact that he had been moved to the Terrell Unit in order to be closer to medical facilities (Dkt. 34, at 4-7). However, Taylor has not alleged that any medical professional ordered any heat-related restriction on his housing while incarcerated at the

---

measures at the Terrell Unit only for the limited purpose of addressing Plaintiff's argument that the *Cole* injunction for the Pack Unit should now be applied by this Court to the Terrell Unit.

Terrell Unit. Moreover, Defendants have presented uncontroverted evidence that they are bound by Plaintiff's HSM-18 forms, which reflected no heat-related housing restriction. *See* Dkt. 29-11, at 2-5 (HSM-18); Dkt. 47, at 3 (Classification Chief's affidavit). Plaintiff has not alleged, and the record does not indicate, that his HSM-18 was somehow inaccurate or that medical personnel had ordered heat-related restrictions on Plaintiff's housing that were not incorporated into his HSM-18. Additionally, Plaintiff's administrative grievances did not allege that his medical condition was affected by the heat, but rather complained about heat generally (Dkt. 1-1, at 1-4; Dkt. 53).[14] Plaintiff therefore has not demonstrated a genuine issue of material fact that Defendants acted with deliberate indifference when making his housing assignment at the Terrell Unit.

The Court therefore concludes in the alternative that summary judgment is warranted for Defendants on Eighth Amendment grounds.

## IV. CONCLUSION

Plaintiff has failed to establish constitutional standing and has not demonstrated a genuine issue of material fact that would prevent summary judgment on his Eighth

---

[14] *Cf. Blackmon*, 484 F. App'x at 873 (inmate's administrative grievances supported his claim of deliberate indifference by prison officials to his medical condition because grievances complained "about the heat, its effect on his health, and prison officials' failure to address his concerns").

Amendment claims. The Court therefore **ORDERS** that Defendants' cross-motion for summary judgment (Dkt. 29) is **GRANTED**. Plaintiff's motion for summary judgment (Dkt. 17) is **DENIED**. All of Plaintiff's claims are **DISMISSED with prejudice**.

The Clerk is instructed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 26th day of March, 2019.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge